FRANCISCO IRIARTE MIRÓ, Plaintiff and Appellee, *v.* PORTS AUTHORITY OF PUERTO RICO, Defendant and Appellant.

No. R-63-57.     Decided September 30, 1964.

---

*Vicente Ortiz Colón* and *Rafael Rivera Genaro* for appellant. *Celestino Iriarte Miró* and *Amancio Arias Cestero* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The question for decision in this case is whether Ports Authority of Puerto Rico, defendant-appellant, is liable for damages suffered by Francisco Iriarte Miró, plaintiff-appellee, when he stumbled, on January 29, 1959, over the point of a railroad rail raised to a higher level from the surface of the land owned by appellant, which rail was located on Fernández Juncos Ave., near Pier No. 3 in San Juan.

The trial court decided, as a matter of fact, that appellee "stumbled over the point of a *railroad rail belonging* to the Ports Authority of Puerto Rico protruding above street level" and as a question of law decided that "*The action of an enterprise which negligently permits a rail belonging to it* to protrude from the pavement of the street causing plaintiff to stumble over it is a source of liability for damages and *constitutes negligence* . . ." and that "*As defendant in this case had the control and upkeep of the tracks, it likewise had the obligation to keep them in good safe conditions for the protection of the public who travelled on the street. It is liable for any damage caused by said tracks upon failing to take such reasonable precautions of vigilance in the maintenance thereof . . . . The proximate and sole cause of the accident was defendant's lack of care and its negligence in failing to take care and keep the tracks belonging to it in good safe conditions for the public.*" (Italics ours.) By virtue thereof it sustained the complaint and ordered appellant to pay appellee the amount of $7,414.16 plus $1,000 for attorney's fees.

Since the other findings of fact of the trial court referred to the nature of the injuries suffered by appellee

and the resulting damages, it is evident that the aforesaid conclusions of law were predicated solely on the finding of fact that the rails in question belonged to appellant and that it had control and supervision thereof. If this were so, the imposition of liability on appellant could be justified. *Vélez v. The Capital*, 77 P.R.R. 663, 670 (1954). Therefore we must decide whether the findings of fact as to who was the owner of the tracks which caused the accident, or who had them under control is supported by the evidence.

The evidence related to the question of fact under consideration consisted in a copy of deed No. 7 on "Giving in Payment, Segregation, Sale with Deferred Payment, Secured by Mortgage and other Particulars," executed on October 29, 1951 by the trustee of the American Railroad Co. of Porto Rico and the Puerto Rico Railroad and Transport Co. (hereinafter designated the American and the Company), appellant (whose former name was Puerto Rico Transportation Authority) and The Puerto Rico Railroad and Transport Co. (hereinafter referred to as the Corporation). It was executed in compliance with a final decree within the proceedings for organization of the two entities previously mentioned and which to that effect provided:

"Within a reasonable time after this Decree shall have become final, *the Trustee herein is hereby directed to convey to the Transportation Authority of Puerto Rico,* in exchange for the moneys heretofore received by the Trustee from said Transportation Authority of Puerto Rico, *all the properties, real and personal . . . equipment, lines, tracks . . . of the debtor corporations . . .*

3. Once the above-mentioned Deed of Conveyance has been executed, *the Transportation Authority of Puerto Rico shall convey* to the reorganized company, *Puerto Rico Railroad and Transport Company, that part of the railroad system of the debtor corporations extending from kilometer 13.570 in Guaynabo . . . to kilometer 279-270-50, including in said sale or conveyance all the real properties* of the debtor corporations located within the points above stated, *as well as all the rolling*

*stock, tracks, inventories, franchises and other operating rights of said debtor corporations . . . ."*

Pursuant to clauses First through the Fourth, inclusive, of the eleventh averment of said deed, the American and the Company sold to appellant all its property, real and personal, rolling stock, tracks, equipment, and franchises. According to the following Fifth clause appellant *segregated all its real properties extending from Km. 13.570 of the tracks of the Corporation up to its terminal in Ponce*, some real property remaining in San Juan, Río Piedras, Carolina and Guaynabo. The Seventh clause provided in part that:

"........ Seventh: The Transportation Authority of Puerto Rico, represented in this case by Salvador V. Caro, as General Manager ............................................................... SELLS, CONVEYS and TRANSFERS ...................................................... To the Puerto Rico Railroad and Transport Co. all the rights or interests it may possess in the concessions described in the preceding Fourth Averment of this deed, and *also all the real properties segregated in the preceding clause, and also all the rolling stock, tracks, repair equipment, inventories, franchises, operating rights, and tax exemption of the Puerto Rico Railroad and Transport Company and the American Railroad Company of Porto Rico,* purchased by the Transportation Authority of P.R. from Fernando E. Zegrí, as trustee of the properties of the Puerto Rico Railroad and Transport Co. and The American Railroad Co. of P.R."

The Twentieth clause provided in part that:

"........Twentieth: *The Transport Authority* of P.R. *shall permit the Corporation,* without payment of any rental whatsoever, the use of buildings, at present occupied *by the railroad enterprise in San Juan and Carolina,* according to the needs of the Corporation, *and the use, also,* without rental, *of the tracks located between San Juan and Carolina and up to Km. 13.570 in Guaynabo, up to the date in which the Authority shall construct port facilities,* including warehouses for merchandise in transit south of San Juan Bay, *and said facilities* may *be used by the Corporation.* For the purposes of this clause, *the Author-*

*ity shall notify the Corporation the date on which said port facilities shall be available for its use and it shall bind itself to discontinue its railroad operations in the aforementioned Metropolitan area within thirty* (30) days after the date on which said port facilities may be utilized by the Corporation; *binding itself, also, to remove, at its own expense, the tracks located within said points within* a term not exceeding ninety (90) days from said date. *Upon failure of the Corporation to comply with said obligation, the Authority shall proceed to remove said tracks at the Corporation's expense."* (Italics ours.)

The position assumed by plaintiff-appellee is in the sense that the interpretation of the clauses of the deed already mentioned leads to the conclusion that the Authority purchased all the assets of the American and the Company and then transferred to the Corporation that part of the property extending from Km. 13.570 in Guaynabo and Km. 279-270.50 in Ponce, without including any property extending from Km. 13.570 in Guaynabo to the terminal in San Juan. It maintains, therefore, that the Authority withheld all the property, including the tracks which it had purchased, between San Juan and Guaynabo. The trial court concurred in said interpretation and therefore decided that the accident in question was due to appellant's negligence.

On the other hand, defendant-appellant states that as to land and other real property the Authority only sold those situated between Guaynabo and Ponce, but as to railroads, franchises, and other rights related to the operation of the railroad, the transfer made by the Authority was complete, without it being limited to the assets located between Guaynabo and Ponce. By virtue thereof, it challenges the decision of the trial court to the effect that the tracks in question belonged to appellant and that it had the control and upkeep of the same and maintains that said court erred in sustaining the complaint.

The analysis we have made of the evidence before us leads us to the conclusion that appellant is correct; that the tracks in question did not belong to it at the time of the accident; that at that time it is presumed that they belonged and were used by the Puerto Rico Railroad and Transport Co., and therefore were under the control and supervision of the latter. By virtue thereof appellant could not be made liable for damages sustained by appellee as a result of the accident he suffered when he stumbled over the rail in question, because the exclusive control of the same at the moment of the accident seemed to be under another enterprise. *Cf. Simonpietri* v. *Blanco; Lippitt & Simonpietri*, 74 P.R.R. 499 501–502 (1953).

From said covenants in the deed in question it is evident that:

a) Appellant acquired title deed of all the properties of the railroad system of the American and the Company, including in said sale *all the real property*.

b) Said sale also covered all the rolling stock, tracks, inventories, franchises, and other operating rights belonging to said two corporations.

c) Said sale was executed in accordance with the final decree of the United States District Court for the District of Puerto Rico for the purpose that appellant could immediately transfer to the Corporation (with the obvious purpose that the latter shall continue the operation of said railroad system) (1) the property located between Km. 13.570 in Guaynabo and Km. 279-270.50 in Ponce, and (2) the property described in the preceding subdivision (b).

d) As the decree did not require appellant to include in said sale the real property extending from Km. 13.570 to San Juan, appellant segregated from the entirety of the real property those it was going to sell to the Corporation (Fifth Clause of the Eleventh paragraph of the deed). When said segregation was made the remainder consisted solely of the

real property between Km. 13.570 and San Juan, and as part of said remainder the rolling stock, franchises, or any part of the railroad system were not included, except the lands. ·

e) In view that these operations were authorized within the proceedings for the reorganization of the American and the Company, aiming to attain the continuation of the operation of its railroad system, it is logical to assume that the decree had to provide, as it did, for the possession by the successor enterprise, that is, the Corporation, of all the means, facilities, decrees, and necessary property to continue said operation and that consequently the sale covenants in the deed included *all the tracks* of the railroad system here in question, including those located between Km. 13.570 and San Juan. As a part of the reorganization plan there was no excuse for appellant to withhold title deed of the tracks in said area since it was not going to participate in any manner whatsoever or perform any railroad operation in the Metropolitan zone of San Juan, but that, on the contrary, the Corporation would perform said operation. So that it is logical to infer that the transfer of all the tracks of the Corporation included those located in · San Juan and more particularly, · those which gave rise to the accident. The Twentieth clause of said deed maintains and affirms the previous relation of the purposes and covenants of said execution. Appellant having retained title deed of the real property between Km. 13.570 and San Juan, and the purpose being that the Corporation would continue the operation of the railroad system in its full extent and manner existing at the time, "until the Authority (that is the appellant) shall build port facilities including warehouses for merchandise in transit in the southern side of San Juan Bay and said facilities could be utilized by the Corporation · (P.R. Railroad)," · the provision of the Twentieth clause to the effect that the buildings occupied by the railroad system between Km. 13.570 and San Juan as well as the land where said

tracks were laid in said area, be used without any payment of rent, was made necessary. So that when said Twentieth clause provides for the use, without payment of rent, of the tracks located between San Juan and Carolina and up to Km. 13.570, it necessarily referred to the use of the tracks in appellant's land. Hence, that same clause required that as soon as appellant advised that the port facilities were available, the Corporation was bound "to stop its railroad operations in the Metropolitan area" and to "remove, at its own expense, the tracks within said points" and in default thereof the Authority was authorized "to proceed to the removal of said tracks at the Corporation's expense."

At all times, since the accident in this case, appellant has maintained that it was not the owner of or had the control over the rails which gave rise to the action in the instant case. However, although appellee had ample opportunity to determine who was the real owner of the tracks of the railroad system in the Metropolitan area of San Juan, the record does not reveal that he took any effective steps to that effect.

In the absence of proof of notification of the availability of port facilities south of San Juan Bay, it must be presumed that on the date of the accident which gave rise to this litigation, the Puerto Rico Transport, and not appellant, was the owner of the rails which caused the accident suffered by plaintiff and that it continued its railroad operations utilizing to that effect the rails in question and therefore it had the use and control of the tracks when the accident occurred. No evidence appears in the record of the case that appellant was actually in the use and control of the tracks, or evidence of any act or omission on the part of appellant or its agents which caused or contributed to the cause of said accident.

In view of the foregoing we are constrained to decide that the trial court erred in finding appellant liable for

damages suffered by appellee and, therefore, the judgment will be reversed in this case and the complaint dismissed.

Mr. Chief Justice Negrón Fernández dissented.